THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEPHEN D. SPEELMON,<br><br>Plaintiff,<br>v.<br><br>MITCHELL TUCKER, *et al.*,<br><br>Defendants. | CASE NO. C16-1526-JCC<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW |

This matter was tried before the Court on October 9, 2018 and October 10, 2018. Plaintiff's claims were for unpaid wages for service, double wages for wrongful withholding, quantum meruit, unjust enrichment, statutory highest wages, and repayment of a loan. Defendants counterclaimed for contribution for debts of the partnership and for attorney fees associated with the discharge of a wrongful maritime lien filed by Plaintiff.

Following a bench trial and pursuant to Federal Rule of Civil Procedure 52(a), the Court makes the following findings of fact and conclusions of law:

**I.  FINDINGS OF FACT**

   a. Around April 2014, Alaska General Seafoods ("AGS") informed Plaintiff that it would be willing to help him finance a tender vessel for the 2014 and later seasons, provided that Plaintiff could find the vessel. AGS recommended that Plaintiff look at the F/V SALMON BEAUTY (the "Vessel").

b. Around May 2014, Plaintiff approached Defendant Tucker with a proposal to form a partnership for fish tendering in Alaska. Plaintiff proposed purchasing the Vessel, which was moored in Kodiak, Alaska.

c. Plaintiff is an experienced fisherman and vessel engineer. Defendant Tucker has mechanical expertise and vessel engineering experience, but no experience with the fishing industry.

d. Plaintiff and Defendant Tucker agreed to partner in a venture to purchase the Vessel and operate a tendering business. Plaintiff and Defendant Tucker's partnership would be on a 50/50 basis. Plaintiff would handle day-to-day fishing operations, including hiring crew, acting as vessel master, doing maintenance and repairs, paying vessel expenses, and other related matters. Defendant Tucker would provide maintenance and repairs and his wife, Valerie Tucker, would provide bookkeeping and business services.

e. Plaintiff would be paid $500 for each tendering day. Beyond that, neither partner agreed to take any set amount of compensation for their work as partners, including for living expenses and repair work. Instead, each partner's additional compensation would only come from the profits earned by the Vessel.

f. Each partner invested an initial $25,000 to fund the purchase of the Vessel. This money paid by each partner was a capital investment in the partnership. Thereafter, both parties contributed significant amounts of money to the partnership.

g. Defendant Tucker held title to the Vessel and used his credit to obtain financing through AGS.

h. When the Vessel was initially purchased, Plaintiff informed Defendant Tucker that he did not want his name associated with the Vessel's ownership because of potential problems with Plaintiff's Capital Construction Fund and the possibility of divorce from his spouse. Defendant Tucker continued to believe that this was Plaintiff's

1      desire throughout the duration of the partnership.

       i. Initially, the financing and money associated with the Vessel was held in a joint checking account with three signatories: Plaintiff, Defendant Tucker, and Valerie Tucker.

       j. After the 2014 season, Valerie Tucker formed SMV Packers, Inc. ("SMV Packers") as corporate title holder for the Vessel.

       k. Sometime after SMV Packers's incorporation, the joint checking account used by Plaintiff, Defendant Tucker, and Valerie Tucker became a business account for SMV Packers, which Plaintiff maintained access to.

       l. SMV Packers did not include Plaintiff as an owner, director, or shareholder because Defendant Tucker and Valerie Tucker believed that Plaintiff did not want his name associated with ownership of the Vessel and because Plaintiff never corrected that belief.

       m. Despite the fact that Plaintiff's name was not formally associated with ownership of the Vessel or SMV Packers, Defendants continued to believe and act upon the belief that Plaintiff was an equal partner.

       n. Throughout the partnership, the Vessel needed a large, costly amount of repair work. Both Plaintiff and Defendant Tucker performed repair work on the Vessel, which was performed both in Alaska and on Defendant Tucker's property.

       o. In 2014, AGS backed out of the 2014 tendering contract. Nevertheless, through Plaintiff's efforts, the partnership obtained a tendering contract with Pacific Seafoods for the 2014 season.

       p. In 2015, the Vessel began tendering for AGS under a ten-year tendering contract. In 2015 and 2016, the Vessel tendered for both AGS and Ocean Beauty.

       q. In 2014, Plaintiff made a series of withdrawals from the joint checking account, which Defendants understood to be Plaintiff's master's wages compensation for

1. 2014.

r. Plaintiff admitted in deposition testimony that he was fully paid his master's wages in 2015 and 2016.

s. In 2016, Plaintiff filed a claim of lien with the Coast Guard National Vessel Documentation Center, claiming he was owed $140,000. About six months later, Plaintiff released the lien.

t. Neither party presented any expert witnesses to discuss the bookkeeping or finances. Due to the lack of insight regarding what the bookkeeping numbers mean, where the money went, what the money was used for, how much each person contributed, or how much each person was paid, the Court is unable to make any additional findings of fact regarding the money, besides those discussed above.

## II. CONCLUSIONS OF LAW

a. This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1333, 1367(a) and 46 U.S.C. § 31343.

b. Venue is properly set in the United States District Court, Western District of Washington, pursuant to 28 U.S.C. § 1391.

c. "[T]he association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership." Wash. Rev. Code § 25.05.055(1). The May 2014 agreement made between Plaintiff and Defendant Tucker created a partnership.

d. Plaintiff has failed to establish by a preponderance of the evidence that he is entitled to additional master's wages. Employees may sue their employers for failure to pay for worked performed. Wash. Rev. Code § 49.52.050. In 2014, the parties operated a joint checking account, out of which Plaintiff made a series of withdrawals, which Defendants understood were for his master's wages. Absent expert testimony, the Court cannot determine how much Plaintiff was actually paid during the 2014 season.

Therefore, Plaintiff cannot establish by a preponderance of the evidence that he is entitled to additional master's wages for the 2014 season. With regard to the 2015 and 2016 seasons, Plaintiff admitted in deposition testimony that he was paid his master's wages in full.

  e. Plaintiff has failed to establish by a preponderance of the evidence that he is entitled to pay for repair work performed on the Vessel. Generally, absent an agreement to the contrary, a "partner is not entitled to remuneration for services performed for the partnership . . . ." Wash. Rev. Code § 25.05.150(8). Beyond the $500 per tendering day for master's wages, there was no compensation agreement between the parties, including for repair work. Because Plaintiff was a partner and because there was no agreement otherwise, Plaintiff is not entitled to remuneration for labor performed for the partnership, which includes repair and maintenance of the Vessel.

  f. Plaintiff has failed to establish by a preponderance of the evidence that he is entitled to statutory highest wages of $650 per day for master's wages as a result of not having a crew contract. Fishing vessel employees are entitled to a written employment contract and, if no such agreement is provided, the employee is entitled to the highest rate of wages at the port or place from which the plaintiff is engaged. 46 U.S.C. § 10601. Plaintiff cannot claim that, because the employment contract was not in writing, he is entitled to higher wages than those agreed upon, when Plaintiff himself was responsible for drafting the crew contracts.

  g. Employers that willfully withhold wages due to their employees are liable for twice the amount withheld. Wash. Rev. Code § 49.52.070. Because the Court finds there was no wage violation, Plaintiff's claim of willful wage violation necessarily fails.

  h. Plaintiff has failed to establish by a preponderance of the evidence that his contributions to the partnership were loans. Because the Court finds that the relationship between Plaintiff and Defendant Tucker was initially a partnership,

Plaintiff's contributions to the partnership are properly characterized as capital contributions, absent any agreement or expert testimony to the contrary. *See* Wash. Rev. Code § 25.05.150.

    i. Because the Court finds there was a partnership, Plaintiff's quantum meruit and unjust enrichment claims fail as a matter of law. If the parties have an existing oral or written contract controlling the relationship, it precludes a finding of quantum meruit or unjust enrichment. *See Chandler v. Wash. Toll Bridge Auth'y*, 137 P.2d 97, 103 (Wash. 1943). The parties' partnership agreement, in which they agreed to pay Plaintiff a set amount of $500 per tendering day, precludes a finding of quantum meruit or unjust enrichment as a matter of law.

    j. Defendants have failed to prove that they are entitled to contribution for the debts of the partnership. Each partner "is chargeable with a share of the partnership losses in proportion to the partner's share of the profits." Wash. Rev. Code § 25.05.150(b)(2). Absent expert testimony regarding SMV Packers's profits and losses, the Court cannot determine what share of the alleged losses Plaintiff is liable for. Therefore, Defendants have not proved by a preponderance that they are entitled to contribution for any debts of the partnership.

    k. Defendants have failed to prove that they are entitled to attorney fees because of Plaintiff's filing of an allegedly wrongful maritime lien. Maritime lien claims by vessel owners or those in control of the vessel are prohibited. A party who files an improper lien is subject to an award of attorney fees, unless their position was "substantially justified." 46 U.S.C. § 31343(c)(2). Plaintiff's lien was substantially justified because there was a dispute as to whether Plaintiff was an employee or partner of the venture (which is the very subject of this litigation). Defendant has not shown by a preponderance of the evidence that this disagreement as to Plaintiff's relationship to the venture was not substantially justified.

Accordingly, the Court finds in favor of Defendants with respect to Plaintiff's claims and in favor of Plaintiff with respect to Defendants' counterclaims.

DATED this 11th day of October 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE